INDEPENDENT BANKERS ASSOCIATION OF AMERICA, and American Bankers Association, Plaintiff,

v.

FARM CREDIT ADMINISTRATION, Defendant.

No. CIV.A. 97–00695.

United States District Court, District of Columbia.

Nov. 24, 1997.

Albert B. Krachman, Leonard J. Rubin, Bracewell & Patterson, L.L.P., Washington, DC, for Independent Bankers Ass'n of America.

John Joseph Gill, Michael Francis Crotty, American Bankers Ass'n, Washington, DC, for American Bankers Ass'n.

Judry Laeb Subar, U.S. Dept. of Justice, Washington, DC, for Farm Credit Admin.

Arvid Edward Roach, II, Covington & Burling, Washington, DC, for The Farm Credit Council.

### MEMORANDUM OPINION

SPORKIN, District Judge.

This matter comes before the Court on cross-motions for summary judgment.[1] Plaintiffs in this case, the Independent Bankers Association of America and the American Bankers Association, together represent most of private commercial banks in the country which compete directly with the Defendant Farm Credit Administration's ("FCA") lending institutions as created by the Farm Credit Act of 1971, 12 U.S.C. § 2001 et seq. ("Act"). Plaintiffs, on behalf of their member banks, challenge five sections of the Farm Credit Administration's recently adopted Final Rule amending its regulations governing the eligibility and scope of borrowing under the Farm Credit System ("System"). 12 C.F.R., Part 613, Subparts A, B, 62 Fed.Reg. 4,429 (1997) (to be codified at 12 C.F.R. Part 613). Plaintiffs allege that the new regulations violate not only the plain language but also the congressional intent of the Farm Credit Act by broadening the categories of entities eligible to borrow from the System and by relaxing the restrictions on the permissible purposes of the loans. Plaintiffs allege that the new regulations cause competitive injury to its member institutions. In response, the Defendant Farm Credit Administration and the amicus Farm Credit Council, a trade association of the System's lending institutions, allege that Plaintiffs lack standing to bring this suit. Defendants contend that Plaintiffs stand outside the zone of interests envisioned by the Act. Furthermore, regardless of standing, Defendants argue that the new regulations fall well within the lending authority prescribed by the statute.

### I. FACTUAL BACKGROUND

Originally established by Congress in 1916, the Farm Credit System is an expansive network of banks and associations designed to provide credit to the agricultural sector of the nation's economy. See H.R.Rep. No. 96–1287, at 15 (1980), reprinted in 1980 U.S.C.C.A.N. 7095, 7098. This case turns on the proper interpretation of section 2001(a) of Farm Credit Act of 1971. Section 2001(a) of the Farm Credit Act states,

> It is declared to be the policy of the Congress, recognizing that a prosperous, productive agriculture is essential to a free nation and recognizing the growing need for credit in rural areas, that the farmer-

---

1. Plaintiffs originally moved for a preliminary injunction and filed papers in support thereof; Defendants filed an opposition and also moved separately for summary judgment. When this Court heard argument on October 31, 1997, it was on both Plaintiffs' motion for preliminary injunction and Defendant's motion for summary judgment. On the record, the Court indicated that it would take the same amount of judicial resources to adjudicate the preliminary motion as the dispositive motion. At that point, Plaintiffs moved on the record for the Court to consider their motion for preliminary injunction as a cross-motion for summary judgment. The Court granted the motion on the record and will now consider Plaintiffs' motion for preliminary injunction as a cross-motion for summary judgment.

owned cooperative Farm Credit System be designed to accomplish the objective of improving the income and well-being of American farmers and ranchers by furnishing sound, adequate, and constructive credit and closely related services to them, their cooperatives, and to selected farm-related businesses necessary for efficient farm operations.

12 U.S.C. § 2001(a).

To implement this policy, the Farm Credit System established a network of localized member organizations or associations.[2] Each is affiliated with either a Farm Credit Bank ("FCB"), an agricultural credit bank ("ACB"), or a bank for cooperatives ("BC"). *See* 12 U.S.C. §§ 2011, 2013, 2279a–2. Together, these banks obtain funds from the sale of notes, bonds, or other obligations in the private money market, for which they are jointly and severally liable. *See* 12 U.S.C. §§ 2013, 2122, 2279a–2, 2155. The member associations generally obtain their funds in turn by borrowing from their affiliated bank.

The Defendant FCA, an independent agency of the federal government, is charged with the responsibility of regulating this System. *See* 12 U.S.C. § 2241. Although the regulatory role of the FCA is in many ways similar to that of the Federal Deposit Insurance Corporation ("FDIC") which oversees Plaintiffs' commercial banks, the FCA differs in one important respect. The FCA does not insure the liabilities of the Farm Credit System. *See* 12 U.S.C. § 2511(c) ("The United States shall not be liable or assume any liability directly or indirectly thereon"). In contrast, the FDIC insures the deposits of Plaintiffs' member institutions up to $100,000 per deposit with the full faith and credit of the United States government. *See* 12 U.S.C. §§ 1811, 1813(1)(5)(B)(1). The System banks are liable jointly and severally for the notes, bonds, debentures, or any other obligations that they issue. *See* 12 U.S.C. § 2155(a).

On September 11, 1995, the FCA published a proposed rule to amend its regulations governing the eligibility requirements for farm credit financing and the permissive scope of that financing. *See* FCA Proposed Rule, 60 Fed.Reg. 47,103. The agency had not carried out a major revision of its regulations since their initial promulgation after the passage of the Act. *See* FCA General Provisions, 37 Fed.Reg. 11,421 (1972). The stated purpose of the revised rule was "to eliminate unnecessary regulatory restrictions and implement statutory changes." Proposed Rule, 60 Fed.Reg. at 47,103 (1995).

As required by the Administrative Procedure Act ("APA"), 5 U.S.C. § 553, the FCA published the proposed rule for a 90–day comment period. *See* 60 Fed.Reg. 47,103 (1995). The agency received over 300 comment letters in response. It revised the rule in light of the comments and resubmitted them for an additional 30 day comment period. *See* 61 Fed.Reg. 42,092 (1996). The agency received more than 1,500 comments in the second round, all of which were considered. On January 30, 1997, the FCA published its final rule. *See* 62 Fed.Reg. 4,429 (1997). Congress's review period of 30 days expired without congressional action, and the final rule became effective on March 11, 1997. *See* 62 Fed.Reg. 11,071 (1997). The new regulations broadened the qualifications used to determine borrower eligibility and the scope of financing from the Farm Credit System.

Five specific areas of the new FCA regulations form the basis of Plaintiffs' lawsuit in this case. First, the regulations revised several aspects of the agency's definition of "farm-related services" for which financing is available under the statute. Second, the new rule restated the standards for lending to agricultural cooperatives. Third, the regulations adjusted the terms under which financing could be provided to agricultural processors or marketers. Fourth, the new regulations eased the ability of legal entities such as corporations to borrow from System institutions. Fifth, the revised rule increased the availability of System lending to finance rural housing. Plaintiffs claim that the new regulations in these five areas un-

---

**2.** Among them are Production Credit Associations ("PCAs"), Federal Land Bank Associations ("FLBAs"), Federal Land Credit Associations ("ACAs"), and Agricultural Credit Associations ("ACAs"). *See* 12 U.S.C. §§ 2071, 2091, 2279b, 2279c–1.

lawfully permit Defendant's Farm Credit System to lend far more than was intended by Congress under the statute, thereby causing competitive harm to Plaintiffs' private member banking institutions.

## II. ANALYSIS

### A. Standing

■ As a threshold matter, Plaintiffs must have standing to bring this suit. To meet the constitutional requirement of standing, a party must establish: 1) that he or she personally suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant, 2) that such injury fairly can be traced to the challenged action, and 3) that the injury is likely to be redressed by a favorable decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 2136–37, 119 L.Ed.2d 351 (1992); *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 472, 102 S.Ct. 752, 758–59, 70 L.Ed.2d 700 (1982) (citations omitted).

■ Plaintiffs in this case claim standing by association. Under the law of standing, an association may sue on behalf of its members even in the absence of injury to itself if: 1) its members would otherwise have standing to sue in their own right; 2) the interests to be protected are germane to the organization's purpose; and 3) neither the claim asserted nor relief requested would require that its members participate in the lawsuit. *See Warth v. Seldin*, 422 U.S. 490, 511, 95 S.Ct. 2197, 2211–12, 45 L.Ed.2d 343 (1975).

Defendants urge this Court to deny standing in this case, arguing that Plaintiffs' individual members lack standing to sustain this action on their own behalf. Because the Act's stated purpose is for the protection of farmers and agricultural interests, Defendants contend that Plaintiffs' alleged injuries stand outside the congressionally prescribed "zone of interest." While the APA grants standing to any person "aggrieved by agency action within the meaning of a relevant statute," 5 U.S.C. § 702, the Supreme Court has interpreted this statutory conferral of standing to be met only when "the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Association of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970).

■ Defendants construe the "zone of interests" test too narrowly. The Supreme Court did not intend for the "zone of interests" test "to be especially demanding; in particular, there need be no indication of congressional purpose to benefit the would be plaintiff." *Clarke v. Securities Indus. Ass'n*, 479 U.S. 388, 399–400, 107 S.Ct. 750, 757, 93 L.Ed.2d 757 (1987) (footnote omitted). "The essential inquiry is whether Congress intended for [this] class to be relied upon to challenge agency disregard of the law." *Id.* at 399, 107 S.Ct. at 757 (quotation omitted). Although the explicitly stated purpose of the Act does not include protecting the competitive interests of private banks, *see* 23 U.S.C. § 2001(a), such interests were clearly within the scope of congressional consideration. For example, in the Act itself, Congress provided "that in no case is any borrower [of the System] to be charged a rate of interest that is below competitive market rates for similar loans made by private lenders to borrowers of equivalent creditworthiness and access to alternative credit." 23 U.S.C. § 2001(c).

The Supreme Court and our Court of Appeals for the District of Columbia Circuit have consistently upheld the standing of parties with a competitive interest "in confining a regulated industry within certain congressionally imposed limitations" to sue "to prevent the alleged loosening of those restrictions." *First Nat'l Bank & Trust Co. v. National Credit Union Administration*, 988 F.2d 1272, 1277 (D.C.Cir.1993) (standing of banks to sue National Credit Union Administration's approval of multiple-employer federal credit union in violation of "common bond" requirement of the Federal Credit Union Act); *see also Clarke v. Securities Indus. Ass'n*, 479 U.S. 388, 107 S.Ct. 750, 93 L.Ed.2d 757 (1987) (standing of trade association of securities dealers to challenge Comptroller of the Currency's ruling that banks

could operate out-of-state offices); *Investment Co. Inst. v. Camp,* 401 U.S. 617, 91 S.Ct. 1091, 28 L.Ed.2d 367 (1971) (standing of association of mutual fund companies to challenge Comptroller of the Currency's decision to allow banks to establish collective investment fund); *Association of Data Processing Serv. Orgs., Inc. v. Camp,* 397 U.S. 150, 156, 90 S.Ct. 827, 831, 25 L.Ed.2d 184 (1970) (standing of data processors to challenge bank service corporations from engaging in activities other than "the performance of bank services" under the Bank Service Corporation Act). In each of these cases, our higher courts found standing for the competing associations, even though none were the intended beneficiaries of the statutes in question.

Thus, in this case, because Plaintiffs' member banks have a competitive interest in confining System lending to the dictates of the congressional statute, they have the standing to challenge the agency's new regulations as a violation of the Act's plain language and intent. And as a trade organization representing the interests of its member financial institutions, Plaintiffs clearly have associational standing in this case to bring the claim on behalf of their members. .

### B. Standard for Judicial Review

Plaintiffs' claims in this case fall broadly into two categories. First, Plaintiffs seek an interpretation of the Farm Credit Act as amended to determine whether the agency's new regulations are sufficiently consistent with its terms so as to withstand a statutory challenge. Second, Plaintiffs seek a determination of whether the agency's decision to change its interpretation of certain parts of the Act falls under the APA standard of an "arbitrary and capricious" agency action.

For the first set of claims, the appropriate standard of review was enunciated by the Supreme Court in *Chevron U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Upon reviewing an agency's interpretation of the law it administers, this court must first look to "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the

agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 843, 104 S.Ct. at 2782. If, however, congressional intent is "silent or ambiguous," as in this case, the court must give deference to the agency's own interpretation. *Id.* at 843–44, 104 S.Ct. at 2781–83 (footnotes omitted). The standard of review is merely whether the agency's action was permissible in light of the statute's structure and purpose. *Id.* at 843–45, 104 S.Ct. at 2781–83. At no time can the court substitute its own interpretation for the agency's. Thus, Plaintiffs in this case bear a heavy burden of proof in challenging the FCA's statutory construction of the Farm Credit Act.

Similarly, for the second set of claims, the appropriate standard of review is still a rather deferential one under the APA's "arbitrary and capricious" language. 5 U.S.C. § 706(2)(A). When an agency's new interpretation conflicts with its previous position, the Supreme Court has noted that it is not entitled to full *Chevron* deference. *See Watt v. Alaska,* 451 U.S. 259, 273, 101 S.Ct. 1673, 1681, 68 L.Ed.2d 80 (1981). Nonetheless, the court still may not substitute its own interpretation for that of the agency's. *See, e.g., Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971). Even when an agency departs from a prior rule, the court's standard of review is still a mere test of rationality, no "clear error of judgment." *See Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973). A "satisfactory explanation" of the agency's action within the record is all that is required. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto. Ins. Co.,* 463 U.S. 29, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983).

Our Court of Appeals has interpreted this test as "not particularly demanding," even when the agency action under review consists of a change in a long-standing regulation position. *See, e.g., Republican Nat'l Comm. v. Federal Election Comm.,* 76 F.3d 400, 407 (D.C.Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 682, 136 L.Ed.2d 607 (1997) (quotation omitted). In fact, as *Chevron* itself noted, an agency is charged with the responsibility of continually evaluating

the appropriateness of regulatory policy, even those already adopted. *See* 467 U.S. at 863–64, 104 S.Ct. at 2791–92; *see also* S.Rep. No. 92–307, at 7 (1971) ("For the well-being of the nation, it is essential that American farmers have available a dependable supply of credit on terms tailored to their special needs and capabilities and adjusted regularly to changing economic and agricultural conditions."). Thus, even under the APA, Plaintiffs in this case bear the substantial burden of overcoming deference to the agency's final determination after a procedurally sound comment and notice period.[3]

### C. Application of the Standards

In light of the standards for judicial review in this case, this Court finds that the agency acted well within its regulatory authority in each of the five sections in question. Upon review of the administrative record, this Court finds that the agency adopted its new regulations in a thoughtful, reasoned manner, taking care to consider the concerns of affected parties in the notice and comment period. The broad, permissive language of the statute clearly covers the more expansive lending under the new regulations. And the mere fact that the agency had not seized upon the full scope of its lending authority in the past in no way precludes it now from reasonably adopting such regulations.

### 1. Farm–Related Businesses

■ Section 2017 of the Farm Credit Act states that "[t]he credit and financial services authorized in this subchapter may be made available to ... persons furnishing to farmers and ranchers farm-related services directly related to their on-farm operating

needs." 12 U.S.C. § 2017(2). Plaintiffs contend that three aspects of the new regulation governing § 2017(2) loans violate the express language and clear intent of the Act. First and foremost, Plaintiffs contend that one part of the new regulation eliminates an express statutory restriction on such farm-related service loans. Section 2019 of the Act states that "[l]oans to persons furnishing farm-related services to farmers and ranchers directly related to their on-farm operating needs may be made for the necessary capital structures and equipment and initial working capital for such services." 12 U.S.C. § 2019(c)(1). Under the old regulation, the FCA mirrored this statutory language by restricting loans under § 2017(2) to "necessary sites, capital structures, working capital, equipment, and operating needs incident to the operation" of farm-related services. *See* 37 Fed.Reg. 11,407, 11,422 (1972).

The new regulation at issue permits financing of "the farm-related business activities of an eligible borrower who derives more than 50 percent of its annual income ... from furnishing farm-related services that are directly related to the agricultural production of farmers and ranchers." 62 Fed. Reg. at 4442. Under the old rule, an eligible borrower deriving 50 percent or less of its income from farm-related services could only borrow specifically to provide those services. Under the new rule, an eligible borrower deriving more than 50 percent of its income from farm-related services may now borrow from the System for any firm function, not just its farm-related services. By eliminating the requirement that borrowing be limited specifically to capital financing of farm-

---

**3.** Underlying all of Plaintiffs' complaint is an accusation of bad faith on the part of the agency. Plaintiffs allege that the FCA knew that its statute could not be interpreted to allow the desired regulations. Plaintiffs claim that is the reason why the agency first turned to Congress. Plaintiffs argue that just four months before the adoption of the new regulations, the FCA had tried to pass legislation through Congress amending the Farm Credit Act to eliminate the specific restrictions on lending at issue in this case. Plaintiffs contend that when Congress refused to act, the agency proceeded to "reinterpret" the statute and adopt new regulations eliminating the same specific restrictions.

Although the agency did support legislative proposals before Congress in 1994 and 1995, these bills were not coextensive with the regulatory changes at issue in this case. The proposals, if enacted, would have permitted lending far beyond the scope of even the new regulations. *Cf. e.g.,* H.R. 4129 *and* 62 Fed.Reg. 4442. Thus, contrary to Plaintiffs' characterization, the agency did not proceed to "reinterpret" the statute in direct contravention of legislative will when Congress failed to pass the proposed legislation. The agency's actions on Capitol Hill to expand its legislative authority do not bear on the agency's interpretation of its existing statutory authority in this case. The standard of review for the latter remains the same.

related services for these businesses, Plaintiffs contend that the agency impermissibly eliminated an express statutory restriction on lending.

■ The plain language of the statutory sections in question do not support Plaintiffs' interpretation. Both sections 2017(2) and 2019(c)(1) express words of permission, not restriction. Sections 2017(2) and 2019(c)(1) state that the FCA "may" loan under certain statutory conditions, not that they must loan only under such conditions. The plain words of the statute alone answers Plaintiffs' claim. The mere fact that the agency had heretofore adopted Plaintiffs' restrictive reading of the statute as a regulation does not bar the FCA from now reconsidering the scope and eligibility of lending so long as the statute permits it.

Contrary to Plaintiffs' claims, the effect of the new regulation does not violate the intent of the scope and lending eligibility of the provision as a whole. Those businesses now no longer constrained to borrow strictly for farm-related services nonetheless must be first and foremost farm-related businesses providing services directly related to farmers' agricultural production. *See* 62 Fed. Reg. at 4442. And even though borrowing for these businesses need not be limited solely to farm-related services, the borrowed funds must still go to some farm-related business activity.[4] *See id.* The types of business helped by the new regulation include such farm necessities as crop spraying operations, custom feed mixing businesses, and veterinary service providers. Thus the effect of the new regulation certainly seems well within the statutory objective of "improving the income and well-being of American farmers ... by furnishing sound, adequate, and constructive credit ... to selected farm-related businesses necessary for efficient farm operations." 12 U.S.C. § 2001(a).

■ Secondly, Plaintiffs contend that another part of the new regulation governing farm-related business loans ignores the congressional intent to limit System financing

only to those farm-related businesses that provide on-farm, "custom-type" services. Under the old regulations, the FCA had defined farm-related businesses as those "engaged in furnishing to farmers or ranchers custom-type farm-related services directly related to their on-farm operating needs." And such "custom-type" services were "[t]he performance of on-farm functions on a 'for-hire' basis which farmers and ranchers typically have done for themselves." *See* 12 C.F.R. §§ 613.3050(a)–(b), 619.9120 (repealed 1997). The new regulation repealed those definitions that restricted lending to just those farm-related businesses that provide "custom-type" services. Citing to 12 U.S.C. § 2017(2) and § 2075(a)(3), Plaintiffs allege that the agency in this action not only revoked its prior interpretation, but also violated the statute which required that interpretation.

Yet the sections of the statute cited by Plaintiffs in support of their claim do not restrict lending to custom-type services at all. In fact, they make no mention of the concept. The sections employ the broad language of allowing financial assistance to those "furnishing to farmers and ranchers farm-related services directly related to their on-farm operating needs." *See* 12 U.S.C. §§ 2017(2), 2075(a)(3). Furthermore, to ensure flexibility, Congress never defined in the statute what qualifies as an "on-farm operating need." While Plaintiffs refer to statements made in the legislative history that associate these sections with custom-type service lending, those comments could just as well be understood as references to the primary example of eligible services to be financed under the statute rather than as definitive restrictions on System lending. *See* Plaintiffs' Memorandum at 30–32. Given the indefiniteness of congressional intent in the legislative history, the plain meaning of the statute must prevail.

As for the alleged inconsistency of the agency's action in revoking a prior interpretation, this Court finds that the FCA gave an adequate explanation for its change. In pro-

---

4. In fact, this restriction was the result of the comments of several commercial banking associations who wanted further assurance that financ-

ing under this new section would still be related to farming purposes. *See* 61 Fed.Reg. at 42,108.

posing the elimination of the "custom-type" service requirement, the agency cited to the evolving technology in farm-related industries. The agency stated that "agricultural producers today rely on technologically advanced services that they cannot provide for themselves, such as computer mapping of soil and crop conditions, nutritional analysis for dairy production, and specialized animal husbandry records and services." *See* 60 Fed. Reg. at 47, 108. Since these non-custom type services also attend to today's on-farm operating needs, the agency's reason for this change in regulation clearly cannot be deemed an arbitrary and capricious determination.

■ Finally, Plaintiffs challenge the part of the new farm-related business regulation which authorizes System financing of merchants whose primary function is selling inputs or purchasing farm products. Previously, under the old regulations, loans to commercial enterprises selling inputs to farmers or purchasing outputs could not be made unless "substantially all of such inputs handled [were] used incident to the services provided." *See* 12 C.F.R. § 613.3050(b)(2) (repealed 1997). The new regulation eliminates that requirement. Plaintiffs argue that the regulation now impermissibly permits the financing of commodity buyers or input sellers in violation of §§ 2017(2) and 2075(a)(3) of the statute. Plaintiffs contend that "farm-relatedness" under these sections prohibits such financing unless the purchase or sale of goods is incidental to a farm-related service.

Again, the plain words of the statute contradict Plaintiffs' narrow interpretation. It broadly permits the financing of any business furnishing farm-related services directly related to on-farm operating needs. *See* §§ 2017(2), 2075(a)(3). Moreover, as stated previously, the new regulation would not permit a wholesale financing of non-farm related activities as Plaintiffs fear. For most businesses, the regulations in effect would be the same as before—System financing only for the farm-related services that they provide.

But even for the limited class of businesses (deriving 50 percent or more of firm income from farm-related services) effected by the new regulation, System financing still would only be available for "farm-related" business activities.[5] As the FCA adequately explained on the record, the new regulations would finance only those entities "that are primarily devoted to farm-related service activities or if the borrower is not primarily devoted to farm-related services, financing is restricted to a level that such activities are accomplished in relation to the whole business." *See* 62 Fed.Reg. at 4438. Just as the old, the new regulations mandate a significant showing of "farm-relatedness" to become eligible for farm credit financing as authorized by the statute.

### 2. Lending to Service Cooperatives

■ Under the statute, certain System banks are authorized to lend to cooperatives which in turn have the power to furnish "farm or aquatic business services or services to [other] eligible cooperatives." 12 U.S.C. § 2129(a). Under the old agency regulations, the term "farm or aquatic business services" was defined to mean "any goods, business, or services normally used by farmers, ranchers, or producers or harvesters of aquatic products which contribute to their business operations or are in furtherance of the welfare or security of the livelihood of such persons." 12 C.F.R. § 613.3110(a)(3) (repealed 1997). The new regulations amend this language to read "any goods, business, or services normally used by farmers, ranchers, or producers and harvesters of aquatic products in their business operations or to improve the welfare or livelihood of such persons." 62 Fed.Reg. at 4442.

Plaintiffs allege that effect of the new language clearly contravenes the intent of Congress by unlawfully redefining farm or aquatic business services now to include any activity that could conceivably improve the "welfare" of eligible borrowers. *Id.* Plaintiffs argue that the regulation now permits financing of "non-business" services as well.

---

5. The distinction in the new regulation would do away with the restriction on farm-related services so long as it still met the standard of a farm-related business. This clearly is an area over which the FCA has regulatory authority.

This, they claim, is beyond the agency's authority.

Although the language of the regulation was updated and streamlined, Defendants allege that the agency never intended to change its meaning. When it published the proposed changes for public comment, the agency took care to stress that the rewording of the rule was "not intended to alter the substance of the current regulation." *See* 60 Fed.Reg. at 47,112. In light of the agency's representation that the two are in effect the same regulation, Plaintiffs at this time have no basis to challenge the agency's new regulation. The agency is entitled to deference by the Court, and without a concrete example of "non-business" financing to support Plaintiffs' allegation, the agency's position that nothing has changed in substance must be accepted by this Court.

### 3. Processing and Marketing Loans

▮ The statute permits financing of the processing or marketing operations of bona fide farmers, ranchers, and aquatic producers or harvesters. 12 U.S.C. §§ 2019(a)(1), 2075(a)(1). According to the statute, such processing or marketing operations must be "directly related" to the agricultural or aquatic activities of the borrower and that such activities of the borrower supply "some portion" of the agricultural product used in the processing or marketing operations. *See id.*

In interpreting the statutory provisions, the old regulations required that "[w]here ownership of the processing and/or marketing operation differs from that of the basic production operation, all of the ownership of the processing and/or marketing operation shall be vested in persons eligible to borrow under" the statute (namely farmers, ranchers, or aquatic producers). *See* 12 C.F.R. § 613.3045(b)(2)(iii) (repealed 1997). The new regulation eliminates the requirement of sole ownership and now requires ownership of only more than 50 percent of the operation to be eligible for System funds. *See* 62 Fed.Reg. at 4442.

Plaintiffs allege that the new regulations impermissibly·violate the statutory provisions which the agency had previously relied upon to impose the old limits on System lending to processing or marketing operations. They contend that the new rules in effect permit the financing of "agribusiness" which focuses on the processing and marketing of agricultural products instead of actual agricultural production.

Although the consequences of the agency's action may allow some additional financing of "agribusiness," as Plaintiffs fear, the plain language of the statutes does not forbid such a collateral effect. Certainly, the congressional intent was for there to be a "direct relationship" between producers and the operation in question. But over 50 percent ownership of the operation by a producer easily meets that element.

▮ In its commentary on the regulation, the agency articulated a reasonable explanation for the proposed change—to avoid the unintended consequences of the old regulation. The agency found that the old provision "denie[d] otherwise eligible farmer-owned processing or marketing operations alternative credit options merely because employees or investors own[ed] a minority interest." *See* 61 Fed.Reg. at 42,106. Since the effect of the old regulation was in direct contravention of the agency's statutory charge to improve "the income and well-being of American farmers and ranchers by furnishing sound, adequate, and constructive credit," the agency acted well within its authority to change the rule. *See* 12 U.S.C. § 2001(a).

### 4.· Eligibility of Legal Entities

▮ The statute authorizes lending to "bona fide" farmers, ranchers, and producers or harvesters of aquatic products without ever defining who or what qualifies. *See* 12 U.S.C. §§ 2017(1), 2075(a)(1). Under the old regulations, the FCA interpreted the statutory provision to favor the individual person. It placed significant limitations on legal entities seeking financing from the System. *See* 12 C.F.R. § 613.3020(b) (repealed 1997). The new regulations eliminated all such restrictions on borrowing by legal entities. In its place, the agency adopted a "sliding scale test" that does not prefer individuals over

corporations per se, but provides financing to both commensurate with their agricultural activities. *See* 62 Fed.Reg. at 4441. This test, which depends on the degree of a potential borrower's involvement in the business of agriculture and not on the technical legal form that the borrower takes, is entirely consistent with the purpose of the statute. In light of the reasonableness of the agency's position and the lack of statutory definition otherwise, Plaintiffs' challenge cannot stand.

5. Rural Housing

 In addition to farmers, ranchers and the like, "owners of rural homes" are eligible for financing under the statute. *See* 12 U.S.C. § 2017(3). The statute goes on to specify that the System can lend money "to rural residents for rural housing financing under regulations of the Farm Credit Administration." *See* 12 U.S.C. §§ 2019(b)(1), 2075(a)(2). Under its old regulations, the agency restricted such financing to owner-occupants of rural housing. *See* 12 C.F.R. § 613.3040(a)(1) (repealed 1997). Plaintiffs allege that the new regulation impermissibly eliminated the restriction.

The plain words of the statute, however, suggest that the agency's new interpretation is valid. The statute gives the agency broad discretion in this area, expressly deferring in the text to the regulations of the FCA. Moreover, the agency's articulated rationale is well within the purpose of the statute. It determined that the previous restriction did not "ensure the availability of affordable housing for rural residents." *See* 62 Fed. Reg. at 4429, 4438; *see also* 61 Fed.Reg. at 42,092, 42,109. Yet this was the express intent of the statutory provision on rural housing. Thus, it was a reasonable decision to amend the regulation to permit occupancy by tenants as well as owners. To stay within the intent of the statute, the regulation still carefully limits the scope of lending to a single-family moderately priced home that is the occupant's primary residence and located in a rural area. *See* 62 Fed.Reg. at 4442. The agency's decision withstands Plaintiffs' challenge.

## III. CONCLUSION

For the reasons set forth above, this Court finds standing for the Plaintiffs to bring this case, but grants summary judgment in favor of the Defendant on all counts of the Plaintiffs' Complaint. An appropriate Order is attached.

## *ORDER*

For the reasons set forth in the Memorandum Opinion above, it is hereby

**ORDERED** that Plaintiffs are **GRANTED** standing to bring the case captioned above; it is further

**ORDERED** that Defendant Farm Credit Administration's Motion for Summary Judgment is **GRANTED**; it is further

**ORDERED** that Plaintiff Independent Bankers Association of America and American Bankers Association's Motion for Summary Judgment is hereby **DENIED**; it is further

**ORDERED** that the case captioned above is hereby **DISMISSED**.